# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Township of Unity       :
                              :
         v.              : No. 1479 C.D. 2015
                              : Submitted: April 12, 2016
Jean Ann Keller,         :
              Appellant     :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  June 16, 2016**

       This is an appeal from the order of the Court of Common Pleas of Westmoreland County (Trial Court) by the Honorable David A. Regoli, finding Jean Ann Keller (Keller) in violation of the Unity Township (Township) Zoning Ordinance (Ordinance), directing her to remove a chain link fence and various kennel structures from her property within 120 days, and directing her to pay a penalty in the amount of $300.  For the reasons that follow, we affirm the order of the Trial Court.

       Keller resides in a single family home on a single acre of property located in the A-Agricultural zoning district in the Township.  By way of background, in 1996 the Township Board of Supervisors granted Keller conditional use approval for a 'breeding' kennel business, with the express provision that no more than twelve (12) dogs were to be kept on the property and

no other dogs were to be boarded on the site. (October 26, 2010 Opinion of the Township Zoning Hearing Board (2010 Board Opinion), Findings of Fact (F.F.) ¶ 4, Supplemental Reproduced Record (S.R.R.) at 90; February 28, 2014 Township Complaint (2014 Complaint), ¶ 8(b).) However, it is clear from the record that by at least 2002, Keller was operating in direct violation of those terms, converting her business from a breeding kennel to an unauthorized rescue kennel with double the number of permitted dogs; astonishingly, by 2010, she was keeping approximately 75 dogs on her one-acre property. (2010 Board Opinion, F.F. ¶¶ 7-8, S.R.R. at 90.) To house the animals, Keller constructed a series of chain-link pens and/or runs covered by tarpaulins, comprised of eight 6'x12' runs, one 10'x12' run, seven 5'x10' runs, nine 10'x10' runs, and two 10'x20' runs. (2010 Board Opinion, F.F. ¶¶ 11-12, S.R.R. at 91.) In 2010, Keller received a Notice of Violation providing that "[a] kennel is a 'special exception use' in the 'A' zoning district and must be approved by the Unity Township Zoning Hearing Board prior to becoming operational" and further providing that Keller was in violation of Ordinance Section 118-701(W), which requires that kennel buildings and runs shall be at least 100 from any property line.[1] (Notice of Violation.) Keller's kennel runs are approximately 35 feet from one side of the property and 20 feet

---

[1] Section 118-701(W) of the Ordinance provides:

> **Kennels**. Kennels shall be completely enclosed with a chain-link fence at least six feet high. Dogs housed outside overnight shall be kept within a completely enclosed structure. Kennel buildings and runs shall be at least 100 feet from any property line and the premises shall be maintained in a sanitary manner at all times.

(Certified Record, Plaintiff's Exhibit 1 at 15.)

from the other side of the property. Keller made application to the Unity Township Zoning Hearing Board (Board) for a 'special exception' to operate a kennel characterized as a 'rescue kennel' on her property and a dimensional variance to keep the kennel structures at issue in their current locations.[2] Following a hearing, both requests were denied by the Board.[3] Keller appealed,[4] and those proceedings culminated in a June 2012 memorandum opinion of this Court that affirmed the Trial Judge's August 2011 order denying her appeal from the Board's 2010 decision; on December 4, 2012, the Pennsylvania Supreme Court denied Keller's petition for allowance of appeal.[5]

---

[2] To comply with the mandates of the Ordinance, Keller was seeking an approximate 80 foot variance on one side of the property and a 65 foot variance on the other side of the property. (October 26, 2010 Opinion of the Township Zoning Hearing Board (2010 Board Opinion), Findings of Fact (F.F.) ¶ 34.)

[3] In its Opinion, the Board made extensive findings of fact and conclusions of law, including its finding that the testimony of the neighboring property owners regarding the unbearable barking noise and foul odors emanating from Keller's facility was both credible and compelling, and its conclusion that the type of variance requested by Keller was unacceptable given the area in question and the proximity of the kennels and runs to neighboring property owners. (Board Opinion, F.F. ¶¶ 28-31, Conclusions of Law ¶¶ 3,6, S.R.R. at 94-95, 97-98.)

[4] In its Opinion, the Trial Court found that Keller had intentionally changed the nature of her use and failed to abide by the conditions attached to the use, and that the level of noise generated by barking dogs and the foul odors emanating from the animals created an offensive environment for the residents in the neighborhood, inhibiting nearby property owners from using their yards for outdoor activities. (August 22, 2011 Trial Court Opinion.)

[5] *Jean A. Keller v. Zoning Hearing Board of the Township of Unity and the Township of Unity* (Pa. Cmwlth., No. 306 C.D. 2012, Filed June 22, 2012), *petition for allowance of appeal denied*, 46 A.3d 833 (Pa. 2012).

In its 2010 decision, the Board granted Keller a period of 120 days to cease operation as a kennel facility; in response, Keller decreased the number of dogs on her property to a level below the number required for state licensing (26), but continued to house between 20 and 24 dogs, keeping them outside in the same kennels and runs previously used for her prohibited rescue kennel operations.

The present action originated with the Township's 2014 Complaint, in which it sought an order directing Keller to remove all outdoor kennels, runs or other structures located within 100 feet of an adjoining property line, or in the alternative, to permit the Township to remove such structures, and to authorize a civil action against Keller to recover costs incurred in the removal. (2014 Complaint.) At a March 19, 2015 hearing before the Trial Court, Keller testified that there were 23 dogs on her property. (March 19, 2015 Hearing Transcript (H.T.), S.R.R. at 37.) The former Township Zoning and Enforcement Officer (Twp. Officer) also testified, stating that in Spring 2013, following the Supreme Court's denial of Keller's petition for allowance of appeal, the Township contacted Keller to determine her intentions. (H.T., S.R.R. at 44.) The Twp. Officer stated that at that meeting, attended by Keller, Keller's boyfriend, and the Township's attorney, Keller was told that in order to avoid further enforcement actions, her kennel structures must be removed from the property. (*Id*.) The Twp. Officer testified that Keller was also told that the remaining dogs could stay with Keller until they died, but that they would have to be kept inside Keller's residence. (*Id*.)

The Board found in its 2010 opinion that out of the nearly seventy dogs who were being boarded at Keller's property, twenty-five of them were too old or too infirmed to be adopted; at the March 2015 hearing, Keller testified that she understood that those 'unadoptable' dogs would be permitted to remain with

4

her until their deaths and that she had promised that no additional dogs would be brought in. (2010 Board Opinion, F.F. ¶ 25, S.R.R. at 94; H.T., S.R.R. at 31.) Keller did not testify as to whether or not the Twp. Officer had in fact informed her that the kennel structures must be removed and the dogs must be housed inside her residence if they were to remain on the property; as part of his final summation, Keller's counsel stated:

> We have some conflicting testimony as to what happened when [Keller] met with [the Twp. Officer and Township attorney]. Ms. Keller says that she was told just basically don't bring any more dogs in, you got under your number, you know we're going to leave you alone. That was her intention. That was her hope going forward.

(H.T., S.R.R. at 55-56.)

The Trial Court found, based on the prior use of the property as a rescue kennel and Keller's testimony regarding the number of dogs that remain there overnight within the chain-link structures, that the structures located on Keller's property fell within the Township Ordinance definition of "Kennel." Kennel is defined in the Ordinance as "[a] building or structure, cage or pen used for the purpose of breeding, boarding or selling or raising animals as a hobby, or for private, commercial or professional business." (Ordinance Section 118-203 ("Definitions").)

The Trial Court agreed with the Township that the structures were being used by Keller for the purpose of raising animals as a hobby. Noting that there is no dispute that the kennels are situated within 100 feet of Keller's property line in violation of Section 118-701(W) of the Ordinance, the Trial Court found that Keller's use of the property is in violation of the Ordinance and directed the removal of "each of the chain link structures, *i.e.*, kennels, located on her property"

5

within 120 days from the date of the Order. (Trial Court Order at 2.) Keller appealed to the Pennsylvania Superior Court, and on August 17, 2015, the case was transferred to this Court.

Before this Court, Keller disputes the Trial Court's determination that she was utilizing the structures in question to house dogs as a 'hobby,' contending that she is raising all of the dogs on her property as her 'pets' or 'kids.' She argues that a plain reading of the Ordinance definition of 'kennel' reveals that a building, structure, cage or pen only becomes a "kennel" for purposes of the Ordinance when it is used for one of the delineated purposes, and accordingly, a building, structure, cage or pen escapes the definition of "kennel" – and thus escapes the 100 foot setback rule – if it is not used for one of the delineated purposes. Keller argues specifically that (i) the current 'purpose' of the structures is to house pets and any prior use is irrelevant; (ii) there is no support in the Ordinance to establish that the dogs are being raised as a hobby – the Ordinance does not define the word 'hobby' and its common usage is 'a pursuit outside one's regular occupation engaged in for relaxation' – so, e.g., only an activity such as raising dogs to hunt or raising dogs to participate in shows would qualify as a 'hobby;' and (iii) a full reading of the Ordinance reveals that pets can be housed in structures that are not considered to be kennels.

First, we find no error in the Trial Court's determination that the structures are being used by Keller to raise animals as a hobby and therefore fall within the Township's definition of "kennel." Keller's avocation, her abiding interest, her 'passion' to provide a home for rescue animals has been clearly demonstrated throughout these protracted proceedings; her efforts to continue to raise the remaining dogs can properly be viewed as her hobby or her private

6

business. However, as a matter of interpretation, we find that it is of no moment whether Keller is presently housing these animals outside her residence as her 'pets' or as part of a commercial business. Article 200, Section 118-2-1 of the Ordinance, which governs definitions and word usage, specifically directs that the words "used" or "occupied" shall include the words "intended, designed." (Township Ordinance at 5.) As such, notwithstanding Keller's argument that the current purpose of the structure is simply to house her personal pets, it is abundantly clear that the offending structures were intended and designed to be a "kennel," as evidenced by Keller's 1996 request for a conditional use of her property as a kennel business to breed dogs and her 2010 application for a special exception and variances to permit her to operate as a rescue kennel for an unspecified and unlimited number of dogs.

Moreover, we cannot agree that Ordinance Section 118-402(K) provides any support whatsoever for Keller's argument that the term 'hobby' within the definition of "kennel" was not meant to encompass the housing of domestic pets. Section 118-402(K) addresses accessory use standards for "Kennels and Runs," and prohibits "kennels, runs, pens or other structures" intended for use as shelter for more than two common domestic pets in a *residential district* and permits structures intended for use as shelters for other than common domestic pets in *residential districts used principally for agricultural purposes.* First, because Keller's property is neither located in a residential district nor is it subject to an agricultural use, Section 118-402(K) does not apply here. Second, it refers to kennels used as shelter for domestic pets and therefore clearly contemplates that kennels encompass the housing of domestic pets. Third, Section 118-402(K) does

7

nothing to affect the requirement that a "kennel, run, pen or other structure" must be kept at least 100 feet from an adjoining property line.

Here, the Trial Court properly found that the structures located on Keller's property fall within the definition of "kennel" as defined by the Ordinance, and are situated within one hundred feet of her property line in violation of Section 118-701 thereof. Accordingly, we affirm the Order of the Trial Court, which directed Keller to remove all of the kennel structures within 120 days and ordered her to pay a penalty in the amount of $300.

_____
**JAMES GARDNER COLINS, Senior Judge**

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Township of Unity | : | |
| | : | |
| v. | : | No. 1479 C.D. 2015 |
| | : | |
| Jean Ann Keller, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 16th day of June, 2016, the Order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is **AFFIRMED**.

_____
**JAMES GARDNER COLINS, Senior Judge**